181 So.2d 510

**Robert Eugene TADLOCK**

v.

**STATE.**

**2 Div. 122.**

Court of Appeals of Alabama.

Dec. 21, 1965.

Thaddeus J. Davis, Jr., Marion, for appellant.

Richmond M. Flowers, Atty. Gen., and Owen Bridges, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

This is an appeal from a judgment of the Circuit Court of Perry County denying appellant's petition for writ of error coram nobis.

On July 22, 1961, appellant was convicted in the Circuit Court of Perry County of the offense of grand larceny. The record before us shows that he waived indictment, and was charged by information with the crime of grand larceny; that on July 22, 1961, appellant and counsel employed by him appeared in open court; that on that day appellant, upon advice of said counsel, entered a plea of guilty to the charge in the information, and was adjudged guilty by the court and sentenced to four years in the State penitentiary.

Appellant alleges in his petition for writ of error coram nobis that he was denied a constitutional right in that "He was forced into trial by the State of Alabama on a felony for which his liberty was in jeopardy without sufficient or adequate counsel." He further alleges in his petition that the court erred at the original trial by:

"1. Failing to appoint him with counsel for his defense.

"2. Failing to permit him inspection of a certified copy of the indictment before pleading.

"3. Permitting the Circuit Solicitor to use perjured and fabricated testimony and evidence, knowing the same to be perjured and fabricated."

A hearing on appellant's petition for writ of error coram nobis was held on November 5, 1964. Appellant was represented by court-appointed counsel at the hearing.

Appellant sought to establish at the hearing that he was not represented by counsel when his plea of guilty was entered and accepted by the court. He contends that a plea of guilty had already been accepted by the court prior to July 22, 1961, when he formally entered a plea in open court. Appellant gave the following testimony on direct examination:

"Q. Would you please explain to the Court what you mean by having already entered a plea of guilty?

"A. I wrote Judge L. S. Moore, and the Solicitor, Blanchard McLeod, a letter telling them that I wanted to plead guilty and to be tried, and I never heard from either letter. So I wrote the Attorney Generel, McDonald Gallion, and he, in turn, wrote the Prosecuting Attorney, Mr. McLeod, and sent me a copy of the letter, and in the letter he said to Mr. McLeod: apparently the defendant is ready to plead guilty. You may proceed under Title 15, Section 263 or 265, I forget which.

"MR. ARBUTHNOT: Your Honor, I object to that testimony in that the

letter is the best evidence of what took place.

"THE COURT: Well, you don't have the letter now?

"THE PETITIONER: Yes, sir; I have the letter at Kilby. I don't have it here.

"THE COURT: I will overrule and let him testify.

"BY MR. DAVIS:

"Q. Now, Mr. Tadlock—

"A. (Interrupting) In this letter the date was set for the hearing—no; that's wrong, I was mistaken. There was no date set. He was advising the Prosecuting Attorney to accept my plea, and then they set the date, the date here that I was sentenced on. So, I sent after Mr. Locke, and he come and we had a talk and he told me that they had done set my date for hearing, and that is when I hired him as my counsel, after I had entered my plea of guilty and the State accepted it.

"Q. You considered that when you wrote those letters that you had entered a plea of guilty. Is that your contention?

"A. That's right.

"BY MR. DAVIS:

"Q. And you actually employed Mr. Locke after you had indicated your intention to plead guilty to, I believe you testified, the Attorney General, Mr. McDonald Gallion, and Mr. Blanchard McLeod, the Solicitor. Is that correct?

"A. Yes, sir.

"Q. And did you so inform Attorney Locke of that fact at the time you employed him?

"A. Mr. Locke already knew that I had already entered a plea of guilty. The word defense was never brought up in our conversation. I asked him to talk to the Judge for me, and he said he would."

Upon examination by the court appellant gave the following testimony:

"Q. Now, when you got over here to Court that day, the day you entered a formal plea of guilty in open Court, that was the 22nd of July, 1961, and Mr. Locke was with you. Was he not?

"A. Yes, sir.

"Q. And he appeared as your attorney. Did he not?

"A. Yes, sir.

"Q. And evidence was taken. Is that right?

"A. Yes, sir.

"Q. And you did not enter your plea until after the evidence was taken, did you?

"A. No, sir; my plea was entered and accepted by the Court—

"Q. Did you enter a plea after the evidence was taken or before the evidence was taken that day?

"A. I entered a plea of guilty both times, before and after.

"Q. The only plea you entered that day was after the evidence was taken. Is that right? Let me read you a part of the Court order here: (Reading) 'The Defendant having heretofore made known to the Court that he desires to waive an indictment in this cause and enter a plea of guilty.' Now, that is dated July 22nd. You had made known to the Court that you desired to waive an indictment in this case. Had you not?

"A. Yes, sir.

"Q. All right. That part of the order is true, isn't it?

"A. Yes, sir.

"Q. (Reading) 'And the Court having ordered the Solicitor to prepare and file an information charging the Defendant with the offense with the same certainty as an indictment.' That information was filed, was it not? I show you the information in this case, and ask you if it wasn't read to you in Court that day? You see this information here, that information had been prepared and filed in that case, had it not, the day it was heard—that's the charge against you that was presented by the Solicitor?

"A. Yes, sir.

"Q. So that much of the Court order is true, isn't it?

"A. Yes, sir.

"Q. Continuing reading from the Court's order: (Reading) . 'And the Defendant appearing in Court in his own proper person and attended by his attorney Hon. Judson C. Locke.' That's true, isn't it?

"A. Yes, sir; that's true.

"Q. (Reading) 'And the Court having heard the evidence in the case and the Court being convinced beyond a reasonable doubt that the Defendant is guilty of grand Larceny as charged in the information and the Defendant's attorney having advised the Defendant to enter a plea of guilty and that being done in the presence of the Court in open Court.' Is that true?

"A. Yes, sir; that's true.

"Q. (Reading) 'The Court does not permit the Defendant to enter a plea of grand larceny as charged in the information.' After your attorney, in open Court, had advised with you after the evidence had been taken and your attorney advised with you, then the Court permitted you to enter a formal plea of guilty. Is that right?

"A. He advised me not to litigate the case.

"Q. And he advised you to plead guilty in open Court after the evidence was taken. Is that right?

"A. Yes, sir; before and after the evidence was taken.

*    *    *    *    *    *

"Q. Do you make any contention in this case that Mr. Locke is not a good lawyer or anything of that nature?

"A. No, sir; I believe that Mr. Locke is a very competent lawyer."

On redirect examination, appellant testified as follows:

"Q. You retained Mr. Locke in a limited employment as an attorney. Is that right?

"A. Yes, sir; he was not trying to defend me in any way to prove me guilty or not guilty, because I knew I was guilty because the Court had already accepted my plea of guilty.

"MR. DAVIS: That is all.

"THE COURT: Did either you or Mr. Locke make any statement to the Court that he was there in that Court for any purpose other than to represent you?

"A. No, sir.

"THE COURT: Or that there was any limitation on him as an attorney for you?

"A. No, sir."

The attorney employed by appellant, Judson C. Locke, testified on cross-examination:

"Q. Mr. Locke, you were privately employed by Mr. Tadlock?

"A. Yes.

"Q. You weren't appointed by the Court to represent him at the hearing upon which there was a plea of guilty entered?

"A. No; he employed me in the jail over there and we went into the facts. I didn't know anything about it except what he told me. He said he wanted to get it over with and get some credit on his time; that he couldn't make bond, and I said, well, you can have a hearing, and that is what he said he wanted to do. And I was present at the hearing in the Clerk's office right in there and represented him and we went through the testimony and I told the Judge that he told me that he wanted to enter a plea of guilty—I told the Judge that before we took the testimony—and after we took the testimony I told him, I advised him that that was the best thing for him if he wanted to plead guilty, to go ahead and plead guilty, and that's what he said he wanted to do. He was informed of all the facts before he ever entered his plea, but he had stated at different times that he did want to do that prior to that time.

"THE COURT: Stated at different times what—that he did want to plead guilty?

"A. Yes.

"Q. Now Mr. Locke, after he told you in the jail that he wanted to enter a plea of guilty, did you, after that date, contact me?

"A. I don't remember, but I think it was you and told you that he said he wanted to waive indictment and enter a plea of guilty.

"Q. Later on did you get in contact with Judge Moore and inform him of the defendant's desire?

"A. Yes.

"Q. Did he instruct you to have an information drawn up?

"A. Yes.

"Q. Did the Judge set down a hearing for that information?

"A. Yes; that's right; After he told me he wanted to plead guilty, I told you and you told me to get in touch with the Judge, which we did do.

"Q. That was how long before the hearing, Mr. Locke?

"A. Several days, but I don't know how many days. I didn't mark it down on a calendar or keep any record of it, but it was several days."

Appellant was charged, arraigned, and tried under the terms and provisions of Tit. 15, Secs. 260–266, which allow a defendant in a felony case, except those where the punishment imposed may be death, to waive indictment by making known to the court his desire to plead guilty. When such desire is made known to the court the defendant may be charged by an information. The plea is formally received and entered at a hearing in open court set for that purpose. See Tit. 15, Sec. 264, Code 1940.

Clearly, no invasion of appellant's constitutional rights resulted from the fact that appellant was without legal counsel at the time he wrote the circuit Judge, the solicitor, and the Attorney General informing them that he wanted to plead guilty. Such letters were at most merely notice of a desire to plead guilty. A plea of guilty to an indictment or information is entered and received only in open court after the indictment or information has been filed. The court did not receive or "accept" appellant's plea of guilty until July 22, 1961, when appellant appeared in open court and made the plea upon advice of counsel after the evidence was taken. There is no showing that counsel employed by appellant to represent him was incompetent, or that his representation was inadequate.

We conclude that appellant failed to prove any allegation in his petition, and, therefore, this cause is due to be and the same is hereby

Affirmed.